W. A. MAYS and Agnes Mays, Plaintiffs,

v.

Ellis CAMPBELL, Jr., District Director of Internal Revenue, Defendant.

Civ. A. No. CA-3-648.

United States District Court
N. D. Texas,
Dallas Division.

Oct. 14, 1965.

Arthur Glover, Amarillo, Tex., Harry C. Weeks, Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., for plaintiffs.

John B. Jones, Jr., Asst. Atty. Gen., Robert L. Waters, Edward A. Copley, Dept. of Justice, Fort Worth, Tex., Melvin M. Diggs, U. S. Atty., Fort Worth, Tex., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., for defendant.

HUGHES, District Judge.

This action was submitted to the Court (without the intervention of a jury) upon a written Stipulation of Facts and the uncontradicted Answers of Plaintiff, W. A. Mays, to Interrogatories, both of which have been duly filed herein, and upon the briefs of the parties, all of which have been duly considered by the Court.

*Findings of Fact*

The Court finds the facts to be as stipulated by the parties and as testified to by the Plaintiff, W. A. Mays, in his answers to the interrogatories propounded to him by the Defendant. Due to the length of said Stipulation of Facts and the exhibits thereto and of the answers of Plaintiff, W. A. Mays, to said interrogatories, the facts so found will not be repeated at length, but what the Court considers to be the controlling facts will be summarized and next stated as a summary thereof.

1. This action was instituted by Plaintiffs, W. A. Mays and Agnes Mays, husband and wife and residents of Amarillo, Potter County, Texas, against Defendant, Ellis Campbell, Jr., District Director of Internal Revenue, for the recovery of income taxes and interest thereon paid by the Plaintiffs to Defendant in respect to Plaintiffs' income tax liabilities for the calendar years 1961 and 1962. Plaintiffs have duly complied with all procedural requirements which are conditions precedent to their right to institute and maintain this suit. In receiving the sums so paid by Plaintiffs to Defendant, Defendant acted in his official capacity and with probable cause and is entitled to a Certificate of Probable Cause for such actions.

2. The bases for the Plaintiffs' claims for the years 1961 and 1962 are entirely separate. On brief, Defendant conceded that the Plaintiffs were entitled to recover with respect to their claim for 1962. The amount of this recovery is $1,447.87, with interest as provided by law from the date of payment, April 21, 1964. In view of this concession, no further reference will be made in these findings to the matters involved with respect to the year 1962.

3. All of the property and income involved in this proceeding was the community property of Plaintiffs, W. A. Mays and Agnes Mays, under the laws of Texas. Joint income tax returns were filed by the Plaintiffs with Defendant for the years 1961 and 1962. W. A. Mays was the active manager of the community and for convenience only his name will be used in this summary of the findings of fact although his actions hereinafter described were on behalf of the community of W. A. Mays and Agnes Mays.

4. On August 30, 1961 W. A. Mays owned a parcel of real estate in Amarillo, Texas, and a ranch in Kent County, Texas, both of which he had owned for more than six months and had continuously held for investment, revenue, and for use in his business of raising cattle. On that date, he entered into a written agreement (set out in full as an exhibit to the Stipulation of Facts filed herein) with the Florence Lee and C. L. Kilgore Foundation (sometimes hereinafter referred to as Kilgore Foundation) to convey the said Amarillo property and the Kent County ranch to the Kilgore Foundation and to pay Kilgore Foundation $212,979.05 in cash and to receive therefor a conveyance to a ranch in Union County, New Mexico, then owned by Kilgore Foundation. The agreement (in addition to the customary provisions as to title, etc.) contained the following:

"This agreement is contingent upon the First Party (Kilgore Foundation) being able to procure a purchaser for the land at a price and upon terms agreeable to it which Second Party (Mays) agrees to convey as part consideration, and First Party may terminate the agreement if it cannot sell said land at a price and upon agreeable terms within 120 days from the date hereof."

5. On the same day (August 30, 1961), Kilgore Foundation entered into a written contract (likewise set out in full as an exhibit to the Stipulation of Facts filed herein) with Agridustrial Financing, a Texas corporation (sometimes hereinafter referred to as Agridustrial), which recited that Kilgore Foundation was contemplating acquiring the aforesaid Amarillo property and the Kent County ranch then owned by W. A. Mays, and subject to such acquisition and the usual provisions as to title, etc., the contract provided that Kilgore Foundation would sell the properties so to be acquired to Agridustrial for $500,000 in cash, and Agridustrial agreed to purchase the property and pay for same.

6. In connection with the contracts referred to in Paragraphs 4 and 5, Mays made an escrow deposit in the First National Bank of Amarillo, Texas, of $21,797.90, and Agridustrial made an escrow deposit in the same bank of $50,000. Each amount was to be forfeited if W. A. Mays, on the one hand, and Agridustrial, on the other, were to fail to carry out the contract for any reason other

than title, although Kilgore Foundation reserved the right to enforce specific performance of each contract.

7. The aforesaid contracts between Mays and Kilgore Foundation and between Kilgore Foundation and Agridustrial were consummated in the year 1961 in accordance with their terms, the Mays-Kilgore Foundation transaction being first consummated, and this being followed immediately by the consummation of the Kilgore-Agridustrial transaction. After acquiring the New Mexico ranch, Mays held the same for use in his business of cattle raising, and is still the owner of same.

8. W. A. Mays never at any time offered to purchase the Union County, New Mexico, ranch. At the initiation of the negotiations which led to the execution of the aforesaid agreement between W. A. Mays and Kilgore Foundation, W. A. Mays informed the representative of Kilgore Foundation with whom he dealt that he wanted to work out an exchange of properties, and subsequent negotiations proceeded upon that basis.

9. At all pertinent times, the capital stock of Agridustrial was owned of record by Mays 40%, Cleo G. Clayton 10%, Taylor Mays 25%, and Troy Mays 25%. The stock held in the name of Clayton, who was attorney for W. A. Mays, was held for Mays' benefit. Taylor Mays and Troy Mays are the sons of W. A. Mays, and at the time the contracts were entered into, Taylor Mays was 39 years of age and Troy Mays was 37 years of age. Both of these sons were mature, successful business men, and Troy Mays was the active manager of Agridustrial. Agridustrial had been incorporated as a Texas corporation in May, 1952. It was a successful business concern, engaged primarily in making loans, investing in and leasing and renting real estate. On April 30, 1961, it had assets in excess of $500,000 and liabilities of $50,719.07.

10. In the joint income tax return filed by the Plaintiffs for 1961, the aforesaid transaction between W. A. Mays and Kilgore Foundation was treated as a non-taxable exchange under Section 1031

(a), Internal Revenue Code of 1954. Upon audit, the Internal Revenue Service held that said transaction was taxable and resulted in Mays' receiving long-term capital gain, arrived at by valuing the New Mexico ranch at $500,000, which was the amount realized by Kilgore Foundation for the Kent County ranch and the Amarillo property, which properties it had received from W. A. Mays and then sold to Agridustrial. Because of this determination by the Internal Revenue Service, a deficiency in income tax for the year 1961 in the amount of $117,-170.96 was duly assessed against the Plaintiffs and paid by them, with interest in the amount of $14,176.05, on April 21, 1964. These payments represented overpayments which the Plaintiffs are entitled to recover.

11. Upon brief, the Defendant contended that Mays made a sale for cash of his Kent County ranch and Amarillo property to Agridustrial Financing, and that Mays then purchased the New Mexico ranch from Kilgore Foundation for cash.

## Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter involved in this proceeding.

2. Agridustrial Financing, even though wholly owned by the Mays family, being an active, substantial corporation for almost ten years prior to 1961 with total assets in excess of $500,000 and liabilities aggregating $50,719.07, its corporate entity will not be disregarded.

3. Agridustrial Financing not having been organized for the purpose of effecting the purchase of the Mays property, but having been an active and successful corporation for almost ten years, it cannot be considered as a conduit for the exchange of the properties involved herein even though Agridustrial was a family corporation in which Mays owned 40% of the stock.

4. Mays not having intended or agreed to make a sale to Agridustrial, but only having intended and agreed to exchange his properties for other proper-

ties of the Foundation, such exchange cannot be transformed into a sale for the sole purpose of producing a tax.

5. There being no evidence in the record that Mays sold the properties owned by him to Agridustrial for cash and then bought the ranch property owned by the Foundation for cash, but rather the evidence being that there was solely an exchange of properties between Mays and the Foundation, a taxable sale was not effected.

6. The transactions involved herein, being carried out in a legal manner and not being simulated, must be given their normal effect, thus bringing the transactions within the provisions of Section 1031(a) of the Internal Revenue Code of 1954.

7. There being a direct exchange by Mays of property held for productive use or for investment with the Kilgore Foundation for property to be held for productive use or for investment, even though Mays transferred money in addition to the property, no gain should be recognized under the provisions of Section 1031(a) of the Internal Revenue Code of 1954.

8. The transaction summarized in the Findings of Fact by which W. A. Mays conveyed to Kilgore Foundation his Amarillo property and his Kent County ranch and paid Kilgore Foundation $212,979.05 in cash was, from the standpoint of the Plaintiffs, a non-taxable exchange under Section 1031(a), Internal Revenue Code of 1954, and Plaintiffs realized no taxable gain therefrom, and the tax and interest assessed against the Plaintiffs and paid by them to the Defendant upon the theory that said transaction resulted in the realization of long-term capital gain by Plaintiffs were improperly and illegally assessed and collected.

9. Every finding of fact which may be deemed to be a conclusion of law is hereby concluded as a matter of law.

10. The Plaintiffs are entitled to judgment against the Defendant for $131,347.01, with interest thereon as provided by law, on account of the illegal assessment for the year 1961. Plaintiffs are also entitled to recover from Defendant $1,447.87, with interest thereon as provided by law, on account of the illegal assessment for the year 1962. Plaintiffs are also entitled to recover their costs, as provided by law, and Defendant is entitled to a Certificate of Probable Cause so that the amount of the judgment awarded Plaintiffs may be paid from the Treasury of the United States.